THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. FRANK QUIÑONES, Defendant and Appellant.

No. 13354.   Argued December 2, 1948.—Decided March 28, 1949.

Carlos E. Colón for appellant. Vicente Géigel Polanco, Attorney General, (José Aponte, Acting Attorney General on the brief) and J. Rivera Barreras, Prosecuting Attorney, for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Frank Quiñones and others were charged with murder in the first degree for the death of Nazario Confesor García occurred on December 13, 1943. They all moved for separate trials. At the commencement of appellant's trial, the prosecuting attorney reduced the degree of the offense to murder in the second degree. The jury found him guilty of that offense and he was sentenced on April 10, 1947 to ten years in the penitentiary at hard labor.

According to the evidence for the prosecution, Primitivo Torres, one of the defendants, purchased from Naza-

rio Confesor García a ticket of the *bolita* game which won a prize of $500. García, who was a mere agent of the clandestine lottery, appropriated the prize for himself and did not buy the ticket. Hence, the prize was not paid.

On the evening of the day following the drawing of the lottery, appellant and others went to García's house and took him by force to the house of Primitivo Torres, where after closing all the doors and windows, they struck García and ordered him to return the prize money. Then Quiñones, defendant herein, ordered them to kill García, which was done by William Vargas, who was one of the men inside the house. Immediately they all fled through the back door of the house.

Defendant's evidence denied having any interest whatsoever in the prize number. He stated that he had endeavored to help his friend collect the ticket money; that he was not in the house of the victim when the latter was taken to Primitivo Torres' house and that he happened to be in the latter's at the time of the occurrence because when he saw a number of persons gathered in front of the house, he entered to find out what happened; that he never ordered anyone to kill García, but on the contrary, tried to avoid it. He explained that he had fled from the place because being Clerk of the Municipal Court he did not want it known that he was present in a place where a crime had been committed connected with the *bolita* game.

The jury did not believe the evidence of the defendant. After examining the record we can not agree with appellant that the verdict is contrary to the evidence.

■■■ At the commencement of the trial, the defendant moved the court to summon Primitivo Torres—codefendant who had not yet been tried—in order that he should testify as witness for the defense. Torres' attorney intervened and objected to the summons. He informed the court, in the presence of the jury, that if Torres were called as witness, he would refuse to testify, relying on the constitutional right of self incrimination. Notwithstanding this objection,

Torres was summoned and upon being called by the defense to the witness stand, his attorney again intervened and told the court that he had instructed the witness, who was his client, not to testify. The witness himself stated that he did not wish to testify and invoked said privilege. The court sustained the objection. The defense then stated what it intended to prove with the testimony of Primitivo Torres.[1]

Considering that Primitivo Torres was not a mere witness disconnected with the offense, but a co-defendant; that his testimony would deal with the transaction which culminated in the unlawful death of Nazario Confesor García for which he incurred in liability as co-author; that if Torres were compelled to testify as witness for the defense he would be subjected to an intense examination by the District Attorney as to the details of the crime; and lastly, since we are

---

[1] The defense announced that Primitivo Torres would testify the following:

". . . first, that on the day and hour of the occurrence Frank Quiñones had no interest whatsoever, either pecuniary or otherwise, in the ticket of the "bolita"; second, that if Frank Quiñones took any part with him in the occurrence of this event it was because he was his friend and companion in politics, of a political committee in Ponce and for this reason Frank Quiñones went with Primitivo Torres in search of Saro to convince him to pay the tickets; third, that Frank Quiñones never went to Saro's house, nor fired any shot, nor took any part whatsoever inasmuch as he never entered the house of the deceased's wife, but merely remained outside doing other work while the witness went to Saro's. That Frank Quiñones never took the deceased to his house, that is, to the house of Primitivo Torres. Fifth: that Frank Quiñones met Primitivo Torres the day the crime took place, by mere chance, while Saro was already at the house of Primitivo Torres. Sixth: That Frank Quiñones at no time made any statement, then and there, in the room of Primitivo Torres' house nor in any other place nor at any other time that could in any manner be construed as if he abetted or advised or in any manner became co-author of the criminal act committed by William Vargas (a) Cantinflas. Seventh: That he never made any statement of any kind in any place whatsoever. Eighth: That when Cantinflas fired the shots, Frank Quiñones tried to stop him, that is, at the very instant that Cantinflas fired the first shot, Frank Quiñones took hold of Cantinflas' hand in order to stop him from firing again but then Cantinflas threatened him and all the others with the revolver, and they had to accede to the criminal impulse of Cantinflas who stepped forward and fired." (Tr. of Ev., pages 240–241.)

not aware of the defense that Primitivo Torres might plead at his trial, it seems to us clear that he could not be compelled to testify without violating the Fifth Amendment of the Constitution and § 2 of the Organic Act which guarantee to everyone the right to refuse being a witness against himself in a criminal proceeding. But defendant maintains that the testimony of Torres could not have been used against him by virtue of the provisions of Act No. 13 of April 9, 1941 (Sess. Laws, p. 346).[2] This Act stemmed from an opinion rendered on November 1, 1939 by the writer herein as Judge in Vacation, in Mandamus Case No. 15 originally brought in this Court by the People of Puerto Rico against Domingo Sepúlveda, Judge of the District Court of Ponce. In that case the prosecuting attorney of the District Court of Guayama was acting in commission in the District Court of·Ponce and upon making an investigation, summoned a witness to testify in his presence. The witness refused to do so on the ground that her testimony would incriminate her. The prosecuting attorney then moved the District Court of Ponce to summon the witness to appear in that court and answer some questions that the district attorney wished to

---

[2] Sections 1 and 2 of Act No. 13 of April 9, 1941 provide:

"Section 1.—No person shall be prosecuted, punished, or have his property confiscated for testifying or for offering any kind of evidence in a criminal proceeding, process, or investigation, and such immunity shall cover the declarant not only concerning the testimony given by him in regard to the crime being investigated, but also concerning any liability he may have incurred in regard to other crimes; and every person shall be obliged to appear or to testify before a prosecuting attorney, municipal judge, or justice of the peace when said officials summon him as a witness in an investigation being made by them; *Provided*, That refusal to appear or to testify shall constitute contempt which shall be punished by the district court of the judicial district where the summons was issued, or where the witness refuses to testify, on complaint filed in said court by the officer in charge of the investigation, in a summary proceeding in which the defendant shall have two days to answer said complaint, making such allegations as he may deem pertinent. The hearing shall be held within the five (5) days following the answer of the defendant.

"Section 2.—This Act shall not be construed in the sense of obliging a person to testify against himself in any criminal case, and shall apply only to natural persons."

ask, and in default thereof to show cause why she should not be punished for contempt. The summons was issued. The witness appeared but refused to answer the questions put to her by the district attorney. The answers to those questions would have undoubtedly incriminated her. Aware of it, the district attorney then made the following oral motion: "Now we ask Y. H. to tell the defendant (sic) that with respect to the investigation that the People of Puerto Rico is carrying on, she shall not be prosecuted for any public offense. This is our petition." The court felt that the answers to the questions put by the district attorney would incriminate the witness and after stating that §§ 239 and 241 of the Code of Criminal Procedure [3] were inapplicable because the criminal proceedings had not yet commenced, it declared itself without jurisdiction to grant the immunity sought and consequently refused to punish the witness for contempt.

In the opinion denying the writ of Mandamus the writer herein recommended some legislation which the Legislature accepted and approved Act No. 13 of April 9, 1941. It tended to enlarge the scope of §§ 239 and 241 of the Code of Criminal Procedure to which Judge Sepúlveda had referred and § 43 of the Penal Code discussed in the opinion of the Judge in Vacation. None of these sections aimed to grant immunity to a defendant called to testify for a co-defendant. Nor is such the aim pursued by the aforesaid Act No. 13. This immunity is granted to witnesses for the prosecution and to those called by the district attorney, Municipal Judge or Justice of the Peace to testify in an investigation carried on by one of said officers. A different

---

[3] Sections 239 and 241 of the Code of Criminal Procedure provide:

"Section 239.—When two or more persons are included in the same charge, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people."

"Section 241.—The order mentioned in the two preceding sections is an acquittal of the defendant discharged, and is a bar to another prosecution for the same offense."

construction could not have been intended by the lawmaker because it would then result that the immunity of a defendant, no matter the degree of his offense, would be at the mercy of a co-defendant who would choose to call him as a witness in his defense. To construe Act No. 13 in such a fashion would lead to an absurdity.

■ In opening his case to the jury the district attorney announced that he would prove that when someone advised the defendant not to intervene in the collection of the ticket, the latter answered "I do not [an obscene phrase] I am young and I have this and pulled out a revolver", and later when defendant was trying to find out the victim's whereabouts, he said to another person "If he does not give up the money we are going to pierce his heart with bullets." The defense objected to these statements of the prosecuting attorney and urges that the jury was unduly impressed against defendant. But the district attorney did not merely announce what he intended to prove, he offered the evidence to prove it. He was performing his duty in making these statements which he later proved with the evidence.

■ Appellant also assigns as error that the district attorney, in order to impeach the credibility of William Vargas, the witness for the defendant, presented the latter's testimony given in the Insular Penitentiary before District Attorney Suárez Garriga. The witness admitted having given the testimony but explained that what he had said at that time was not true because he had said it in a fit of anger. Appellant overlooks the fact that the court, in permitting the testimony to go to the jury, charged them that it was admitted solely for the purpose of impeaching the credibility of the witness and proved that on a previous occasion the witness had made an entirely different statement from the one he had made at the trial.

■ Finally appellant complains that the sentence was not suspended pursuant to Act No. 259 of April 3, 1946 (Sess. Laws, p. 534). In the light of the facts of this case

which reveal in the defendant a perverse and malign heart, and taking into consideration that he was an officer of the court which bound him more than any other officer to respect the law, we do not see how the court could, without committing a gross abuse of discretion, suspend the sentence. Rather, the court was too benevolent in imposing the minimum penalty.

The judgment is affirmed.

Mr. Justice Negrón Fernández did not participate herein.